UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| CARRIE GUEDEA,<br>Plaintiff,<br>v.<br>RENO-TAHOE AIRPORT AUTHORITY, *et al.*,<br>Defendants. | Case No. 3:25-cv-00680-MMD-CLB<br>ORDER |

## I. SUMMARY

Plaintiff Carrie Guedea brings this action against her former employer, Defendant Reno-Tahoe Airport Authority ("RTAA"), and her former direct supervisor, Defendant Graham Ritz, asserting that she was constructively discharged from employment and bringing claims for violations of the American with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.*, Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2(a)(1), the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, and the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq*. (ECF No. 16 ("FAC").) Defendants filed a motion to motion to dismiss the FAC. (ECF No. 22 ("Motion").)[1] For the reasons explained below, the Court grants the Motion as to all claims except Plaintiff's FMLA interference claim.

## II. BACKGROUND[2]

Plaintiff is a white woman over the age of 40 and has a disability—severe anxiety. (ECF No. 16 at 3-4.) She started working for RTAA as an Airport Duty Manager ("ADM"

---

[1]Plaintiff responded (ECF No. 25 ("Response")) and Defendants replied (ECF No. 26).

[2]The following facts are adapted from the FAC. As an initial matter, the Court notes Defendants' concern that the FAC contains minor chronological inconsistencies. (ECF No. 22 at 14 & n.6.)

on August 18, 2012, was promoted to interim Manager of Airside Operations ("MAO") on or about November 11, 2021, and was subsequently promoted to MAO on July 4, 2022. (*Id.* at 4.) Beginning in late 2022, Plaintiff began to be supervised by Ritz, who is a man and significantly younger than Plaintiff. (*Id.*)

In November 2023, Plaintiff notified RTAA People and Operations Representative Maggie McGrew that she as "on the verge of a breakdown," "feeling hopeless," and that she was unable to sleep. (*Id.*) In early 2024, Plaintiff notified Ritz and RTAA's Chief Operations and Public Safety Officer that she was caring for family members with disabilities and may need to take leave, and Plaintiff took time off and worked remotely in the following months. (*Id.* at 4-5.)

On or around late July 2024, Plaintiff notified Defendants of her disability, and she requested FMLA leave. (*Id.* at 5.) Plaintiff took approved FMLA leave in early August 2024 and returned to work around November 18, 2024. (*Id.* at 5, 7.) While she was on leave, Plaintiff requested demotion to the ADM position as an ADA accommodation on October 1, 2024. (*Id.* at 5-6.) While Defendants initially said this would not be an issue, Ritz notified her about two weeks later that Defendants would not provide this accommodation. (*Id.* at 6.) Defendants did not offer another accommodation. (*Id.*) Plaintiff made numerous requests for accommodation while on leave that were summarily denied without any interactive process. (*Id.* at 7.) In late October 2024, however, one of Plaintiff's colleagues of a similar level sustained an injury, and RTAA accommodated this colleague with a modified work schedule and duties. (*Id.* at 6.)

On or about November 20, 2024, just after Plaintiff returned from her 12-week FMLA leave, Ritz issued Plaintiff a negative performance evaluation during a meeting and placed her on a performance review plan ("PIP"). This was the first time she had gotten a negative evaluation; prior to August 2024, Plaintiff had been rated as a "High Performer." (*Id.* at 7-8.) Ritz could not explain how Plaintiff's performance warranted a PIP since she had been on FMLA leave, but said that her absences and communication were an issue. (*Id.* at 8.) After she returned from FMLA leave, she was no longer able to

work remotely without approval and her prospective pay increase was less than expected. (*Id.* at 8-9.) On or about November 25, 2024, Ritz informed Plaintiff that he hired a man, who was less qualified, for the vacant ADM position that Plaintiff had requested to be demoted to as an accommodation. (*Id.* at 9.) Ritz did this to deny Plaintiffs' accommodation. (*Id.*)

Around December 2024, Plaintiff had to attend PIP meetings with Ritz and McGrew. During these meetings, Plaintiff was harassed, intimidated, and discriminated against on the basis of her age, sex, disability, and need to care for disabled family members. (*Id.*) On or about December 13, 2024, Plaintiff complained that she was being discriminated against to Ritz and McGrew, and she filed another complaint with Interim Chief People and Culture Officer Christy Wheeler on or about December 15, 2024. (*Id.* at 10.) Being required to participate in PIP meetings with the individuals she complained about caused Plaintiff emotional distress and worsened her disability symptoms. (*Id.* at 10-11.) Plaintiff subsequently filed additional complaints in December and January. (*Id.* at 11-12.)

On January 6, 2025, Plaintiff had a meeting with Wheeler, during which she was informed that an investigation was being conducted. During this meeting, Wheeler also acknowledged that RTAA had not engaged in the interactive process with Plaintiff regarding her requests. (*Id.* at 12.) On or around January 10, 2025, Wheeler informed Plaintiff that the PIP would be removed from her file because it was improperly issued, and that RTAA would engage with her in the interactive process. (*Id.* at 13.)

RTAA required Plaintiff to obtain additional ADA paperwork from her physician, determined that Ritz had done "no wrongdoing," and then unilaterally decided that Plaintiff was a "safety concern" and suspended her. (*Id.* at 14.) Plaintiff submitted additional ADA information from her physician on February 20, 2025, and five days later, RTAA informed Plaintiff that it was denying her requests for accommodation and that she would need to return to her position on March 3, 2025 with no accommodations. (*Id.* at 15.) RTAA did not explain why her requested accommodation was unreasonable. (*Id.*) Around March

10, 2025, Plaintiff notified RTAA that she was constructively discharged by RTAA due to the hostile work environment, discrimination, and retaliation. (*Id.* at 16.)

Plaintiff submitted her Pre-Charge Inquiry with the EEOC on or around January 20, 2025, after which she was subjected to further retaliation, harassment and discrimination. (*Id.* at 13-14.) She received a Notice of Right to Sue on September 18, 2025. (*Id.* at 3.)

Arising from these allegations, Plaintiff brings the following claims: (1) disability discrimination; (2) failure to accommodate; (3) discrimination based on race and sex; (4) age discrimination; (5) retaliation; (6) FMLA interference; (7) constructive discharge; and (8) intentional infliction of emotional distress ("IIED"). (*Id.* at 16-26.)

## III. DISCUSSION

Defendants move to dismiss all claims raised against them under Federal Rule of Civil Procedure 12(b)(6).[3]

### A. IIED Claim Against Ritz[4]

Defendants argue that the IIED claim must be dismissed because Plaintiff fails to allege extreme or outrageous conduct by Ritz, nor severe emotional distress suffered by

---

[3] *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (holding that, to withstand a Rule 12(b)(6) challenge, a plaintiff must allege facts to "nudge[] their claims across the line from conceivable to plausible"); *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (holding that a district court must accept as true all well-pled factual allegations in a complaint, while legal conclusions are not entitled to the assumption of truth).

[4] As an initial matter, the parties dispute what claims Plaintiff brings against which Defendants. Defendants argue that Plaintiff's claims against Ritz in his individual capacity arising under the ADA, ADEA, FMLA and Title VII must be dismissed because such claims can only be brought against employers. (ECF No. 22 at 6-7.) Plaintiff responds that she only asserted the IIED claim against Ritz. (ECF No. 25 at 3.) Defendants reply that Plaintiff's opposition failed to respond to their argument and thus the claims should be dismissed. (ECF No. 26 at 3.) While the Court agrees with Defendants that the FAC is unclear as to whether claims arising under federal law are brought against Ritz, it accepts Plaintiff's representation that she brought only an IIED claim against Ritz. Moreover, Plaintiff may not assert these claims against Ritz in any amended complaint, because the Court finds that Plaintiff consents to the granting of the Motion as to these claims. *See* LR 7-2(d).

Plaintiff. (ECF No. 22 at 8-10.) The Court agrees with Defendants as to extreme and outrageous conduct.[5]

To state a claim for IIED, Plaintiff must allege "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress and (3) actual or proximate causation." *Star v. Rabello*, 625 P.2d 90, 92 (Nev. 1981). Extreme and outrageous conduct must be outside all possible bounds of decency and utterly intolerable in a civilized society. *Taylor v. Clark Cnty. Sch. Dist.*, No. 2:18-CV-01264-KJD-VCF, 2019 WL 2453648, at *5 (D. Nev. June 11, 2019) (discussing extreme and outrageous conduct in *Olivero v. Lowe*, 995 P.2d 1023 (Nev. 2000), in which defendant, among other actions, punched plaintiff in the face and threatened plaintiff with a gun).

Plaintiff alleges that "Defendant Ritz's described conduct was extreme, outrageous, and undertaken with either intent or reckless disregard for causing Plaintiffs' emotional distress." (ECF No. 16 at 26.) Specifically, Plaintiff alleges that Ritz summarily denied her accommodation request, issued her a negative performance evaluation, made her submit PTO requests for absences, and talked about how he once disliked a coworker so much he "would have slashed his tires" if he saw him outside of work. (*Id.* at 6, 7, 9-10, 12.) Accepting all well-pled allegations as true, the Court finds that the conduct Plaintiff alleges, while it made Plaintiff uncomfortable, is not conduct outside all possible bounds of decency, nor is it utterly intolerable in civilized society.

Because Plaintiff failed to allege sufficient allegations to state her claim, the Court grants Defendants' Motion as to Plaintiff's IIED claim.

**B. ADA Claims**

Defendants argue that Plaintiff's disability discrimination and failure to accommodate claims fail because the FAC contains no factual allegations as to the essential functions of the MAO position, but if being on call is such a function, Plaintiff

[5]The Court need not address Defendants' severe emotional distress argument.

ceded that she could not perform the role, and is therefore not a qualified individual. (ECF No. 22 at 10-12.)[6] Plaintiff counters that she sufficiently pled that she was a qualified individual because she adequately performed both the MAO and ADM positions as evidenced by her prior performance evaluations, and she need not describe "each and every job function that was affected by her disability." (ECF No. 25 at 6-8.)

To state a claim for discrimination under the ADA[7], Plaintiff must allege that (1) she is disabled within the ADA's meaning; (2) she is a qualified individual able to perform the essential functions of the job with or without reasonable accommodation; and (3) she suffered an adverse employment action because of her disability. *See Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996). A qualified individual "means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 § U.S.C. 12111(8).

In pertinent part, Plaintiff alleges that she is a "qualified individual with a disability" "able to perform the essential functions of her job, with or without a reasonable accommodation." (ECF No. 16 at 17, 18.) She alleges that her disability affects her major life functions, including sleep, and the MAO position required Plaintiff to be "on call 24 hours a day, seven hours a week." (*Id.* at 4.) On November 15, 2023, Plaintiff complained that she was unable to sleep, her disability was exacerbated by the workload. (*Id.* at 4.) After informing Defendants of her disability and while on FMLA leave in September 2024, she requested demotion to the ADM position which she previously held between approximately April 18, 2012 and November 11, 2021. (*Id.* at 5.) Plaintiff alleges that Ritz

---

[6]Defendants raise other arguments (ECF No. 22 at 12-15), but the Court need not address them to resolve the Motion.

[7]Under Title I of the ADA, an employer may not "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

informed Plaintiff that there was an open and available ADM[8] position, but that RTAA was denying her request, and "less qualified, younger male employees" were hired into those positions. (*Id.* at 6, 16.)

Though Plaintiff states that she is a qualified individual, legal conclusions are not entitled to the assumption of the truth. While Plaintiff suggests in her Response that she is a qualified individual because she had previously performed the ADM position successfully until November 2021, Plaintiff reported her disability to RTAA in August 2024, and she does not allege that she was qualified for the ADM position at the time she sought the position in September 2024. (ECF Nos. 25 at 6; 16 at 5.) Moreover, Plaintiff has not pled sufficient factual allegations as to the essential functions of the ADM and MAO positions, nor that she can perform these functions. As Defendants correctly point out, the only job function Plaintiff has described pertains to the on-call requirement of the MAO position, which Plaintiff cannot do. *See Maxson v. Mosaic Sales Sols. Holding Co. LLC*, No. 2:14-CV0-2116-APG-NJK, 2016 WL 973248, at *5 (D. Nev. Mar. 7, 2016) (dismissing failure to accommodate claim where plaintiff "does not state what the essential functions of her job were, nor does she explain what reasonable accommodation would have allowed her to perform that job.").

Accordingly, the Court finds that Plaintiff has failed to allege sufficient factual allegations to support her ADA claims and thus will grant the Motion as to these claims.

### C. Title VII Claim

Defendants argue that Plaintiff fails to adequately allege discrimination on the basis of race and sex because she fails to allege that she experienced an adverse employment action.[9] (ECF No. 22 at 15-18.) Plaintiff counters that she pled that she

---

[8]The Complaint states that there was an open and available "ADO" position, which appears to be a typographical error. (ECF No. 16 at 6.)

[9]Defendants also claim that Plaintiff has not sufficiently pled that she was qualified for her position. (ECF No. 22 at 17.) However, since Defendants fail to provide any analysis, citing internally to their ADA argument, the Court declines to address this argument.

satisfactorily performed her job duties, and that other members outside her protected classes were treated more favorably than she was. (ECF No. 25 at 13-15.) The Court agrees with Defendants.

A plaintiff bringing a Title VII[10] claim has a burden of establishing a prima facie[11] case by showing that "(1) he is a member of a protected class; (2) he was qualified for his position; (3) he experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004). Individuals are similarly situated when they have similar jobs and display similar conduct; they need not be identical, but similar in all material respects. *See Nicholson v. Hyannis Air Serv., Inc.*, 580 F.3d 1116, 1125 (9th Cir. 2009).

Plaintiff alleges that she was "subjected to multiple adverse employment actions based at least partly on her sex and race," that include but are not limited to, "a reduced evaluation, lower pay, limiting her ability to take time off from work, limiting her ability to work remotely, requiring documentation that violated RTAA policies, suspending her without pay[,] and failing to accommodate her disability." (ECF No. 16 at 20.) Specifically, Plaintiff alleges that after she returned from FMLA leave in November 2025, she received a negative performance evaluation and that her prospective pay increase was "reduced by several percent." (*Id.* at 7-8.) Her ability to work remotely was restricted by

---

[10]Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).

[11]As Defendants state correctly, a plaintiff is not required to plead a prima facie case to survive a motion to dismiss. (ECF No. 22 at 16.) However, where a plaintiff pleads a plausible prima facie case, her complaint will also be sufficient to survive a motion to dismiss. *See Sheppard v. David Evans and Assocs.*, 694 F.3d 1045, 1050 & n.2 (9th Cir. 2012).

Defendants[12] and she was required to provide documentation[13] in violation of RTAA policies. (*Id.* at 8-10.) She alleges that there was a "younger Black female in a similar administrative level position" who suffered an injury and was accommodated, and that there were two younger male employees, one Hispanic, who were permitted to change their positions. (*Id.* at 6, 16.)

Plaintiff fails to allege sufficient facts for the Court to reasonably infer that similarly situated individuals outside her protected class were treated more favorably. For example, while Plaintiff alleges that she was given a negative performance evaluation after she returned from her FMLA leave, she does not allege facts that indicate that this happened because she was a white woman. To the extent that Plaintiff pleads that a younger Black female in a similar administrative level position was treated more favorably than her, Plaintiff fails to plead sufficient factual allegations that would support that they were similarly situated, particularly given that Plaintiff sought demotion, but the other individual required "modifying her work scheduled and duties." (ECF No. 16 at 6.) Additionally, Plaintiff alleges that "two male employees were permitted to change their positions," but has not alleged any facts that would support that these employees were similarly situated to Plaintiff. (*Id.* at 16.)

Accordingly, the Court grants Defendants' Motion as to Plaintiff's Title VII claim.

**D. ADEA Claim**

Defendants reiterate their arguments as to the ADA and Title VII claims, arguing that Plaintiff's disparate treatment claim under the ADEA fails for the same reasons. (ECF No. 22 at 18-19.) Plaintiff contends that she adequately pled her age discrimination claim. (ECF No. 25 at 15-17.)

---

[12]Confusingly, Plaintiff alleges both that she was required to obtain advance approval to work remotely and that she was not permitted to work remotely. It is unclear whether Plaintiff requested approval and was denied or was categorically denied the opportunity to work remotely. (*Id.*)

[13]It is unclear to what documentation Plaintiff refers, but Plaintiff seems to allege documentation relates to requests to take PTO for medical appointments.

To establish a prima facie case of discrimination under the ADEA[14], "a plaintiff must allege in her complaint that: (1) she was at least forty years old; (2) she was performing her job satisfactorily; (3) discharged; and (4) either replaced by a substantially younger employee with equal or inferior qualifications *or* discharged under circumstances otherwise giving rise to an inference of age discrimination." *Sheppard*, 694 F.3d at 1049 (citation modified).[15] The Ninth Circuit Court of Appeals "set[s] the bar high for a claim of constructive discharge because federal antidiscrimination policies are better served when the employee and employer attack discrimination within their existing employment relationship . . .." *Poland v. Chertoff*, 494 F.3d 1174, 1184 (9th Cir. 2007). "[C]onstructive discharge occurs when the working conditions deteriorate, as a result of discrimination, to the point that they become sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer." *Id.*

Here, Plaintiff alleges that she is over the age of 40 and had been performing her job satisfactorily until she received a negative performance evaluation upon return from her FMLA leave. (ECF No. 16 at 3, 7, 21.) She alleges that she was constructively discharged on or about March 10, 2025 due to the hostile work environment created by RTAA that Plaintiff, and any "reasonable person," could not support. (*Id.* at 16.) Plaintiff further claims that the ADM position she sought as an accommodation was filled with "younger, less qualified males." (*Id.* at 22.)

The Court finds that Plaintiff has failed to plead sufficient allegations to make a plausible showing as to the third prong—that she was constructively discharged. Plaintiff

---

[14]Under the ADEA, it is unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age." 29 U.S.C. § 623(a)(1).

[15]Plaintiff purports to quote the legal standard from *Sheppard* but the quotation contained in her Response is incorrect. Plaintiff states that under the fourth prong, she must allege that "a substantially younger worker with equal or inferior qualifications was treated more favorably under circumstances giving rise to an inference of age discrimination." (ECF No. 25 at 16-17.)

alleges that she could no longer work remotely without first obtaining approval from Defendants; had to attend performance improvement plan meetings[16]; and that her request for ADA accommodations was denied. (ECF No. 16 at 8, 9, 15, 16.) While these conditions may have been distressing and upsetting to Plaintiff, they are insufficient for the Court to reasonably inferred that the working conditions are "sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job" such that Plaintiff was constructively discharged. *Poland*, 494 F.3d at 1184.

The Court thus grants Defendants' Motion as to Plaintiff's age discrimination claim.

**E. Retaliation Claim**

Defendants argue that Plaintiff's retaliation claim fails because Plaintiff fails to state the statutory basis for her claim and alleges only "multiple adverse employment actions," leaving them unsure of whether Plaintiff brings her claim under the ADA, Title VII, the ADEA, or the FMLA[17]. (ECF No. 22 at 19-21.) Plaintiff counters in her Response that "the FAC and the EEOC charge of discrimination detail under what authority Plaintiff is bringing her claims of retaliation." (ECF No. 25 at 18.) The Court agrees with Defendants.

Here, Plaintiff's fifth cause of action is for "Retaliation." (ECF No. 16 at 22-23.) Plaintiff, in the FAC, alleges that she suffered retaliation due to her disability, age, sex, and race. (ECF No. 16 at 3.) In response to Defendants' Motion, Plaintiff fails to clearly or concisely explain the basis for her retaliation claim or claims, referring Defendants to the FAC and her EEOC charge, and she provides a string cite of cases analyzing retaliation claims under the Fair Labor Standards Act, Title VII and Nevada state law.

---

[16]Plaintiff states in conclusory fashion that she was "harassed, intimidated and discriminated against" during these PIP meetings, but fails to provide sufficient factual allegations as to how she was harassed, intimidated, and discriminated against.

[17]Defendants argue in their Motion that to the extent Plaintiff brings retaliation claims under Title VII or the ADEA, Plaintiff has failed to exhaust these claims. (ECF No. 22 at 19-20.) Plaintiff does not address this argument in her Response, and Defendants argue that Plaintiff has waived it. (ECF No. 26 at 10.) The Court need not address this issue.

Plaintiff has failed to state a retaliation claim because she fails to clearly allege sufficient allegations to support her claim or claims.

Accordingly, the Court grants Defendants' Motion as to Plaintiff's retaliation claim.

**F. FLMA Interference Claim**

Defendants argue that Plaintiff's FMLA interference claim is infirm because Plaintiff's negative performance review was issued for her performance prior to her taking leave, and being placed on a PIP is not an adverse employment action. (ECF No. 22 at 21-23.) Plaintiff counters that she has adequately pled her claim because she was placed in a PIP immediately after returning from FMLA leave based on her disability, and the PIP referenced her use of leave time. (ECF No. 25 at 19-20.) The Court agrees with Plaintiff.

"The FMLA creates two interrelated, substantive employee rights: first, the employee has a right to use a certain amount of leave for protected reasons, and second, the employee has a right to return to his or her job or an equivalent job after using protected leave." *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1122 (9th Cir. 2001). An employer "'cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions.'" *Id.* (quoting 29 C.F.R. § 825.220(c)). "An employee brings an interference claim when she alleges a violation of § 2615(a)(1), which makes it 'unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise' the substantive rights guaranteed by the FMLA." *Hernandez v. MGM Resorts Int'l*, No. 2:24-CV-00725-GMN-BNW, 2025 WL 436918, at *2 (D. Nev. Feb. 7, 2025) (quoting *Sanders v. City of Newport*, 657 F.3d 772, 777) (9th Cir. 2011), report and recommendation adopted, No. 2:24-CV-00725-GMN-BNW, 2025 WL 2582798 (D. Nev. Feb. 26, 2025).

Here, Plaintiff alleges that she took FMLA leave due to her disability, and that upon returning from leave she was issued a negative performance evaluation and placed on a PIP. (ECF No. 16 at 23.) Plaintiff alleges that the PIP referenced her use of leave time "leaving no doubt that her use of FMLA led to disciplinary action," and RTAA subsequently stated that this PIP was procedurally improper and should not have been issued. (*Id.*)

Accepting Plaintiff's allegations as true, Plaintiff has adequately pled sufficient factual allegations to support that Defendants subjected her to a disciplinary action—placement on a PIP—and considered her use of FMLA leave as a negative factor in doing so. Accordingly, the Court denies the Motion as to Plaintiff's FMLA interference claim.

**G. Constructive Discharge**

Defendant contends that Plaintiff's constructive discharge claim is improperly pled as an independent cause of action. (ECF No. 22 at 23-24.) Plaintiff's argument is unclear, but she seems to argue that constructive discharge is a standalone claim for which she has satisfied the pleading requirements. (ECF No. 25 at 21-22.)

Plaintiff suggests that constructive discharge is a standalone claim, citing to *Pennsylvania State Police v. Suders*, 542 U.S. 129 (2004), a case concerning a hostile work environment claim brought under Title VII in which the plaintiff alleged she had been constructively discharged.[18] Plaintiff then cites to *Thomas v. Douglas*, 877 F.2d 1428 (9th Cir. 1989) to invoke the standard for constructive discharge. But *Thomas* concerned a state law wrongful discharge claim in which the plaintiff alleged that he was constructively discharged due to intolerable working conditions arising from his whistle-blowing activities. *Id.* at 1434. Because it is unclear from both the face of the FAC and Plaintiff's Response what claim Plaintiff attempts to bring, the Court grants Defendants' Motion as to Plaintiff's constructive discharge claim.

---

[18]Plaintiff's Response states, "[i]n addition, a constructive discharge is a 'claim distinct from the underlying discriminatory act'" and purports to quote "Pa. State Police, 542 U.S. at 149." However, this quotation does not appear anywhere in *Pennsylvania State Police*. Moreover, to the extent that Plaintiff invokes *Pennsylvania State* to bring a Title VII claim, such a claim may be duplicative of Plaintiff's Title VII discrimination claim, *supra*.

It is unclear whether Plaintiff's counsel is using artificial intelligence to write briefs or is drafting confusing, poorly written briefs without cite checking legal authorities. The Court strongly admonishes Plaintiff's counsel to properly cite check cases cited in future filings.

## IV. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motion before the Court.

It is therefore ordered that Defendants' motion to dismiss the first amended complaint (ECF No. 22) is granted in part and denied in part. It is granted as to all of Plaintiff's claims except her FMLA interference claim. Dismissal is with leave to amend because the Court cannot find that amendment is futile. Plaintiff must file her third amended complaint curing the deficiencies of her claims within 15 days of the date of entry of this order. Failure to do so will result in dismissal of these claims with prejudice.

DATED THIS 28th Day of July 2026.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE